Good morning. My name is Matt Brisson and I represent Mr. Wilson. With the court's permission, I'd like to focus this morning on point one of our brief, which raises the question of whether the record in this case was sufficient to establish a voluntary waiver of the defendant's Sixth Amendment right to counsel. And I would submit that the answer to that question rests on two bedrock legal principles. The first being that the district court in this case had an obligation to conduct a searching and thorough inquiry of all the facts and circumstances surrounding the waiver, including not just whether it was knowing and intelligent, but whether it was voluntary. The second principle being that a waiver is not voluntary where a defendant is forced to face the Hobson's choice of selecting between ineffective assistance on one hand and self-representation on the other, which is exactly the situation that arose in this case, when in the week prior to the trial, defense counsel represented explicitly on the record and in the presence of the defendant that he wasn't prepared to try the case, and that if he was compelled to try the case . . . And the representation by Lawyer No. 5, that he would be ready. It does, Your Honor. It does. But I think ultimately the question focuses on the impact which that statement and those representations had upon the defendant's decision to represent himself. And I think what's problematic here is that you had an explicit linkage, an explicit linkage in the record where the defendant tells the court in light of its declining to provide a continuance, telling the court, my attorney's not ready, he doesn't know the case, but I do know the case. And in light of that, Your Honor, I'm asking to represent myself. And the problem is, at that point, at that point, there should have been a glaring red flag as to the issue of voluntariness. And I think the duty of the court to inquire further should have kicked in at that moment. Well, your client also. There had been the five continuances. It was two months before the trial when he wanted to change his counsel yet again. There is a clear record made, this may be a mistake. Your predecessor counsel has prepared a very long time. I'm not going to give any more adjournments. He made the decision to go ahead. And then even in the colloquy when his lawyer stands up and is seeking yet more time, I think it made clear that he had been dissatisfied with all his prior counsel. He said he had an affinity for jurisprudence. He was ready. In the circumstances, don't you think there's a, you read this record to me, it seems like it was almost inevitable he was eventually going to decide to represent himself. I think what ultimately transpired before this week leading up to the trial, ultimately I would assume it isn't controlling in this case and may not even ultimately be relevant to the court's determination. The government has, I think, sort of set out this potential narrative that Mr. Wilson is the type of individual who perhaps inevitably was going to wind up representing himself. And the problem is, that's ultimately trying to read between the lines of what's on the record. It's speculative, I would submit. It's in some sense playing armchair psychologist. I would submit that the record itself as to what was said and the reasons that Mr. Wilson ultimately stated he was representing himself were that his counsel wasn't prepared. And so I don't think what comes before, while it may inform as far as background goes, I don't think it can control what happened at the moment of the waiver. Because, you know, pursuant to Johnson v. Zerps, the court at that moment had a duty to make an inquiry. And it may well be the fact that if the court had made that inquiry, maybe it would have found, maybe it would have said, you know, despite the representations made by counsel, I find after some questioning that he actually is prepared, you know, that the reasons he's proffering for not being prepared aren't in good faith. Or it might have found ultimately that Mr. Wilson's decision to represent himself was independent of those statements. And if it had made either one of those factual determinations, then the issue would be straightforward. It would be whether or not those factual determinations were clear error. The problem is the inquiry simply wasn't made in this case. So you have the express linkage. You have the failure to make an inquiry under Johnson v. Zerps. And I think the government would acknowledge to the extent that this is an error, it's not susceptible to a harmless error analysis. It's structural error, which would require the conviction to be vacated. I'd be happy to answer any other questions the court might have on this issue or any of the other issues. Otherwise, I would respectfully reserve my time. Could I ask a question about the argument that your client was prevented from developing his case at trial? Are there specific parts of the record that you want us to focus on on the theory that he was kept from asking questions about bias and motive on the part of the crime officers? I mean, I know the government has made a point that we haven't highlighted specific questions. But really the problem is you had this very clear pretrial ruling saying you are not to go there. Clear cut, this is not something you're allowed to ask. So I can't, it's difficult to isolate specific questions because the truth is, by and large, the defendant ended up adhering to the admonishment that he received prior to court. He simply wasn't allowed to ask these questions. And I would submit that those types of questions were ultimately fair game and something that should have been in front of the jury. Whether or not they had merit, it should have been something for the jury to decide, not the court. What was their relevance? I mean, what was he seeking to establish with this? So the issue was there had been a prior lawsuit which had occurred against the Syracuse Police Department which was integral in the investigation of the defendant. So they had played a large role in the investigation. And his allegation was that there was animus on the part of the civil rights lawsuit that he had brought against them. He made allegations that police officers had threatened him and that ultimately the evidence had been fabricated against him. So it wasn't just an argument of selective prosecution. They signaled me out. It was an argument that not only they targeted me, but they made up evidence against me. And the problem is the jury never had an opportunity to decide the merits of that argument one way or another. That large narrative came out in the trial in some way, and I'm suggesting this from the fact that the government began its summation by putting this out as a fantasy, which they then dismissed and went on to give their summation. Is it your argument that it just didn't come out, it came out in cross-examination of the defendant? So certainly the government belittled the notion of that the defendant had in any way been targeted or set up by the Syracuse Police Department, which once you start belittling he had some good faith basis to make this assertion. The fact that this lawsuit actually did exist was something that would have supported that argument. So if anything, having the government, you know, attack the credibility of that argument should have opened up the door and allowed him to bring those facts in. Ultimately what ended up happening is the judge allowed the government to bring it out on cross-examination, which seems to me doubly unfair if the defendant's precluded the entire time from raising this issue and it only comes out during cross-examination. Thank you. Good morning. May it please the Court. My name is Alex Robbins, appearing on behalf of the United States. I'd like to turn first to the FREDA issue with the Court's permission. My colleague referred this Court's attention to what was said on the record and I'd just like to give two examples of that. On page 421 of the appendix is the portion of the record that my colleague just read from where Mr. Moynihan, the fifth lawyer, said, I'm sorry, where the defendant referred to Mr. Moynihan's statement that Mr. Moynihan was unprepared. The context of that quote makes very clear and made very clear to the district court what the defendant was talking about. On 421, the defendant says, if you may recall during a preliminary conference prior to trial, during our colloquy, I made a statement where I said that my lawyer is not ready for trial, but I am. And that was based upon the fact that I do know these, I do know the facts and the particulars and the intricacies and the discrepancies and the multiple discrepancies in this case better than my lawyer. And then after a 15, I'm sorry, 13 page colloquy with the district court about the FREDA waiver on page 434 of the record, the district court says, understands clearly that Mr. Wilson's issue is that he wants to present his grand conspiracy theory and tells Mr. Wilson he will not be allowed to do so. The district court says after this inquiry, FREDA inquiry, that's not going to come in, that's not going to come in. Everything that you're trying to indicate to me that you want to do in representing yourself is not going to be permitted to happen in this courtroom. At which point Mr. Wilson objects and then says he wants to proceed. There was no question before the district court that Mr. Wilson wanted to represent himself so that he could pursue the strategy that five lawyers had effectively refused to pursue on his behalf. That was clear in the record before the district court and that was the connection that the district court made between Mr. Wilson's motivation for invoking his right to represent himself and granting that right. And when you add on that, that there's no question here that's being raised about the subjective, knowing and intelligent nature of Mr. Wilson's decision to invoke his right to represent himself. From this record, it would have been error for the district court to deny Mr. Wilson's right to represent himself. He has a constitutional right to represent himself if he thinks that his lawyers aren't doing what he wants to do and he has his own strategy that he wants to pursue and that's exactly what he did. Well, your adversary points to the fact that the fifth lawyer did say on the record, I'm not ready, I'm not prepared to provide effective representation and that that triggered an obligation on the court's part to inquire into that in order to take Mr. Wilson out of a Hobson's choice. Yes, Your Honor, and the district court did inquire. The page range from 421 to 435 of the appendix is the FREDA inquiry and the district court inquired for quite a length of time as to why Mr. Wilson wanted to represent himself. But he didn't establish that the defense attorney was prepared to proceed, did he? And he did. The district court found that the defense attorney, I think on page 426 of the appendix, the district court states, I don't have any question that he, Moynihan, has the ability to do so. So if we're just looking at individual sort of clips of what was said on the record, yes, the defense attorney said that he wasn't prepared to proceed. In context, we argue that that is a reference to the vast amounts of ancillary discovery that Mr. Wilson wanted him to pursue. And the district court found that that request was disingenuous, were the court's words, and found that the defense attorney was competent to proceed. And I think that goes back to sort of our legal argument on the FREDA issue here, which is that even now my colleague is not willing to squarely argue that there was an error that the court made with respect to substitution of counsel or continuance. In all the other cases that my colleague relies on, including Pasden, there was an error. The error in Pasden was, according to the Third Circuit, that there was all this relevant discovery. There were, I think, hundreds of witnesses that the lawyer needed to have time to depose or to question in order to do a constitutionally effective job at representing the defendant. That was an antecedent error. And so when the district court denied that request and the defendant, as a result, chooses to represent himself in Pasden, then that's a sort of a hybrid case management FREDA error. This court's decision in Schmidt expressly ties the inquiry to whether the defendant was entitled to, were the words of this court, was entitled to a new lawyer. The First Circuit and Maynard, same thing, whether the defendant has a right to a new lawyer. Mr. Wilson did not have a right to a continuance or a right to a new lawyer on the second day of trial. And Mr. Wilson, in the words of FREDA, went into, invoked his right to self-representation with eyes open. That's also not disputed, that subjective element of it. Therefore, there was no FREDA violation here. There was no constitutional violation because there was no violation leading up to it. He wanted to, and the record makes clear, Mr. Wilson thought he could do a better job than his lawyer, like every FREDA defendant, and invoked his right to do so. Can I ask about the conspiracy theory of the case that the court ruled on before trial began? I'm not quite sure I understand the basis for the court's ruling that this was a, the distinction between whether this is a question of law for the court or a, something that's properly explored on cross. Because I would think that if there's a prior lawsuit against the police department and he's been successful and he wants to ask about that of particular officers, that would be, go to bias, motive, and would be permissible cross-examination. Yes, Your Honor, it would. We agree with that. And I think we point out on page 28 of our brief, in footnote 17 as well, the multiple instances in the record where that type of bias questioning, right, was allowed. The issue pre-trial with the, which I believe my colleague is referring to, was a prosecutorial misconduct claim. And again, I, you know, the, legally they are distinct, but factually there's a lot of overlap. The prosecutorial misconduct claim was in the nature of pre-trial motions to dismiss the indictment, the legal motions that I'm being framed because the police department wants to set me up, the prosecutors are involved, this is misconduct, the indictment should be dismissed. That is a legal, I think we all agree, and at least we said in our brief, we agree that that's a legal question, right, whether to dismiss the indictment because of prosecutorial misconduct. There's a second question as to if the indictment goes forward, you go forward on the indictment at trial, can the defendant raise his general misconduct, I was framed claim, the Syracuse Police Department is out to get me before the jury. The district court quite properly thought that that broad of a claim is going to run afoul of Rule 403 for obvious reasons, but when the defendant attempted to question individual officers about their past experiences with him, like did they arrest him before, I think one of the examples in footnote 17 is did you arrest me and choke me, those questions were allowed properly because as the district court acknowledged, as we said in our brief, that the questions going to the credibility of the officers are of course fair game, and that was allowed. If the court has no further questions, we ask that you affirm the judgment below. Thank you. Well, I acknowledge there was a FREDA inquiry which took place. The inquiry focused on whether the waiver was knowing and intelligent, and if there's one thing that's clear is that there's no magical catchism for a FREDA inquiry. It depends on the context of the situation, and here the context of the situation required a focus not just on those other elements but the voluntariness, and I would submit that simply didn't happen here. In fact, as far as the basis for counsel not being prepared, if you go back to the January 5th transcript where the attorney started making these representations to this court, he was frankly brought up short and told he was on thin ice, basically told I don't want to hear any more of these representations. The court stated I don't have the appendix number unfortunately, but it was on January 5th. The court told him for you now to do this is totally inappropriate, and as an officer of this court, sir, I'm warning you, this type of conduct is more than a little out of line, and so contrary to conducting the inquiry, really the court sort of cut off any discussions about the basis for counsel not being prepared. I think the core disagreement we have with the government is whether or not in order for there to be, in order for the waiver to be an antecedent legal error committed by the court, and I simply would submit that the authority does not support that position. I think there's a clear line. The cases where they find the waiver to be voluntary, it's because there was an inquiry. It's because the court conducted a hearing and found the facts that it needed to find, which as I said simply didn't happen here. The government referenced a quote, the focus is on whether the defendant had a right to a new lawyer, but I would really shorthand for saying was there a founded concern on the record that the defendant had about the ability of his attorney to represent him, and whether that concern, whether there was a legitimate concern, and whether that impacted and informed his decision to represent himself. Thank you. Thank you both.